UNITED  STATES  DISTRICT  COURT

EASTERN  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| NATASHA AARON, | 1:07-cv-01303-SMS |
|            Plaintiff, | DECISION AND ORDER ON SOCIAL |
|    v. | SECURITY COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ORDER DIRECTING REMAND PURSUANT |
| COMMISSIONER OF SOCIAL | TO SENTENCE FOUR of 42 U.S.C. § |
| SECURITY, | 405(g) |
|          Defendant. | ORDER DIRECTING THE CLERK TO |
| | ENTER JUDGMENT FOR PLAINTIFF |
| | NATASHA AARON AND AGAINST |
| | DEFENDANT MICHAEL J. ASTRUE |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of an unfavorable decision of the Commissioner of Social Security (Commissioner) with respect to Social Security benefits. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M.

---

[1] District Judge Anthony W. Ishii reassigned the case to the Magistrate Judge for all purposes on November 20, 2007.

1 | Snyder, United States Magistrate Judge.

2 |     I. <u>Procedural History</u>

3 |     On October 11, 2000, Plaintiff, who was born on February 19,
4 | 1978, protectively filed an application for Supplemental Security
5 | Income (SSI), alleging disability since birth due to spinal
6 | meningitis and hydrocephalic condition. (A.R. 88-90.) Plaintiff
7 | had previously filed an application for SSI, which was denied by
8 | an ALJ's determination of non-disability by decision dated March
9 | 7, 2000. (A.R. 15, 54-60.) After Plaintiff's claim was denied
10 | initially and on reconsideration, Plaintiff appeared with counsel
11 | and testified at a hearing held before the Honorable James N.
12 | Baker, Administrative Law Judge (ALJ) of the Social Security
13 | Administration (SSA), on May 1, 2002. (A.R. 15, 70-79, 21-48.) On
14 | July 15, 2002, the ALJ denied Plaintiff's application for
15 | benefits. (<u>Id.</u> at 15-17.) A remand was ordered pursuant to the
16 | parties's stipulation in <u>Aaron v. Barnhart</u>, CV-F-02-6346-DLB in
17 | August 2003. In November 2003, the Appeals Council issued its
18 | remand order pursuant to the Court's direction based on the
19 | existence of new criteria for evaluating mental impairments.
20 | (A.R. 385-86.) The case was to be evaluated without reference to
21 | <u>Chavez v. Bowen</u>, 844 F.2d 691 (9th Cir. 1988) because there were
22 | new regulations for evaluating mental impairments. (A.R. 359.)

23 |     A hearing in Plaintiff's case was held on June 21, 2005,
24 | before the Honorable James Berry, ALJ of the SSA, and Plaintiff
25 | appeared with counsel and testified. (A.R. 507-33.) By decision
26 | dated August 20, 2005, the ALJ denied Plaintiff's application.
27 | (A.R. 359-65.) The decision became the final decision of the
28 | Commissioner when on July 27, 2007, the Appeals Council declined

1 to grant a request for rehearing. (A.R. 348-50.)

2      Plaintiff filed the complaint here on September 7, 2007.
3 Briefing commenced on May 1, 2008, and concluded with the filing
4 of Plaintiff's reply to Defendant's brief on June 6, 2008.

5      II. <u>Standard and Scope of Review</u>

6      Congress has provided a limited scope of judicial review of
7 the Commissioner's decision to deny benefits under the Act. In
8 reviewing findings of fact with respect to such determinations,
9 the Court must determine whether the decision of the Commissioner
10 is supported by substantial evidence. 42 U.S.C. § 405(g).
11 Substantial evidence means "more than a mere scintilla,"
12 <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a
13 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10
14 (9th Cir. 1975). It is "such relevant evidence as a reasonable
15 mind might accept as adequate to support a conclusion."
16 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record
17 as a whole, weighing both the evidence that supports and the
18 evidence that detracts from the Commissioner's conclusion; it may
19 not simply isolate a portion of evidence that supports the
20 decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.
21 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).
22 It is immaterial that the evidence would support a finding
23 contrary to that reached by the Commissioner; the determination
24 of the Commissioner as to a factual matter will stand if
25 supported by substantial evidence because it is the
26 Commissioner's job, and not the Court's, to resolve conflicts in
27 the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th
28 Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9ᵗʰ Cir. 1987).

III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9ᵗʰ Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts

4

to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. <u>See</u> 20 C.F.R. § 416.920.

Here, the ALJ found that Plaintiff had severe impairments of headaches and hydrocephalus controlled by a shunt which did not meet or equal a listed impairment; Plaintiff had the residual functional capacity (RFC) to perform sedentary work and could lift and carry ten pounds occasionally and up to ten pounds frequently, stand or walk for four hours each, and sit for six to

eight hours. Vocational testimony established that Plaintiff could perform jobs existing in significant numbers in the national economy. (A.R 359-60.)

IV. <u>Dr. Meyer's Opinion</u>

Plaintiff argues that the ALJ failed to state legally sufficient reasons for his weighing of the opinion of Dr. William J. Meyer, a neurologist who treated Plaintiff for at least five years. (A.R. 229, 509.)

A. <u>Legal Standards</u>

The standards for evaluating treating source's opinions are as follows:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the

> opinion; and "[o]ther factors" such as the degree
> of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or
> her familiarity with other information in the case
> record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

With respect to proceedings under Title XVI, the Court notes
that an identical regulation has been promulgated. See, 20 C.F.R.
§ 416.927.

As to the legal sufficiency of the ALJ's reasoning, the
governing principles have been recently restated:

> The opinions of treating doctors should be given more
> weight than the opinions of doctors who do not treat
> the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
> Cir.1995) (as amended).] Where the treating doctor's
> opinion is not contradicted by another doctor, it may
> be rejected only for "clear and convincing" reasons
> supported by substantial evidence in the record. Id.
> (internal quotation marks omitted). Even if the
> treating doctor's opinion is contradicted by another
> doctor, the ALJ may not reject this opinion without
> providing "specific and legitimate reasons" supported
> by substantial evidence in the record. Id. at 830,
> quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
> Cir.1983). This can be done by setting out a detailed
> and thorough summary of the facts and conflicting
> clinical evidence, stating his interpretation thereof,
> and making findings. Magallanes [v. Bowen, 881 F.2d
> 747, 751 (9th Cir.1989).] The ALJ must do more than
> offer his conclusions. He must set forth his own
> interpretations and explain why they, rather than the
> doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
> 421-22 (9th Cir.1988).
> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
> accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
> 830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

B. Background

Plaintiff had a seizure disorder that was in remission and a
left-eye implant. (A.R. 169, 360.)

Plaintiff's primary medical problem related to the

1 development of hydrocephalus as a child secondary to spinal
2 meningitis. Treatment included surgical placement of a
3 ventriculoperitoneal (VP) shunt to drain excess cerebral fluid
4 with revisions of the shunt in childhood and adolescence. (A.R.
5 251-52, 168.) Plaintiff was intermittently but increasingly
6 symptomatic, suffering severe headaches associated with blurred
7 vision, disturbed conjugate gaze, and nausea. (A.R. 168, 250.)
8 Three hospitalizations in the five-year period from 1996 through
9 2001 were required for treatment of a nonfunctioning shunt. (Id.)
10 In 1999, the shunt was revised, and in 2001 it was to be re-
11 evaluated for possible replacement. (A.R. 168.) In 2001,
12 Plaintiff stopped work because of pitting edema, which affected
13 her ability to stand or walk. (A.R. 169.)

14      With respect to Plaintiff's medical history concerning her
15 hydrocephalus, a CT scan of the brain in March 2000 revealed a
16 shunt in place functioning normally with no other abnormalities.
17 (A.R. 156.) In August 2000 a CT scan showed mild generalized
18 ventriculomegaly with VP shunt catheter. (A.R. 253.) Plaintiff
19 was hospitalized for headaches with blurred vision, effect on the
20 conjugate gaze, and photophobia. (A.R. 249-50, 243.) There was
21 improvement in late August. (A.R. 227.) In September 2000 a
22 radiological study reflected a shunt with a suggestion of
23 discontinuity where the tubing was connected. (A.R. 150.) A CT
24 scan reflected no dilation of the ventricular system or evidence
25 of hydrocephalus. (A.R. 148.) An x-ray in October 2000 showed
26 disconnection of the peritoneal tubing from the valve. (A.R.
27 145.)

28      In May 2001, Plaintiff was hospitalized for headaches; a

8

radiological study showed a slight increase in the size of the
ventricles that was suspicious for possible shunt malfunction.
(A.R. 209, 330.) A CT scan taken May 6, 2001, when compared with
a scan of August 2000, revealed a minimal increase in the size of
the ventricles with the shunt unchanged. (A.R. 208, 321.)

In September 2001, Plaintiff was hospitalized for two days
with headache and vomiting; she had been seen at another facility
a couple of days before, where enlarged ventricles were detected;
there was somewhat of a decrease in size, with no other
abnormalities, from readings in May. Plaintiff was six months
pregnant. (A.R. 261.)

In January 2003, Plaintiff had asymptomatic days. (A.R.
458.) In May 2003, Plaintiff was treated in the emergency
department for headaches, and she reported that the headaches of
that type were infrequent, occurring three to four times a year,
with the last one being November 2002. (A.R. 446-47, 449.)
Plaintiff continued to suffer headaches in August 2003. (A.R.
440.)

By January 2004, Plaintiff reported to Dr. Wrobel that she
had headaches every other day that were only partially relieved
by Imitrex. (A.R. 495.) Dr. Wrobel reviewed Plaintiff's serial
imaging studies from 2000 forward and observed partial or
complete agenesis of the corpus callosum and batwing ventricles;
the ventricular dilation was moderate; there was no trans
ependymal flow of CSF, and the appearance on serial imaging
studies was stable. (A.R. 495.) On January 28, 2004, Plaintiff
was treated for headache with photophobia and with left eye
deviated slightly to the left, slowed speech, and motor 4/5.

1 (A.R. 492.)

2    In March 2004, a CT scan of the head showed dilated
3 ventricles and mild hydrocephalus. (A.R. 471.) In August 2004,
4 Plaintiff visited Kern Medical Center for treatment for
5 headaches.

6         C. Dr. Meyer's Opinions

7    In August 2000, Dr. Meyer reported that Plaintiff was
8 capable of only part-time work due to intermittent incapacity
9 requiring hospitalization. (A.R. 229, 469.) Plaintiff's
10 disability was one hundred per cent permanent due to chronic
11 headaches. (A.R. 227.)

12   In 2001, Dr. Meyer opined that even at the times when
13 Plaintiff was able to work, she was prevented from working more
14 than four hours due to ventriculomegaly; water could form on her
15 head at any time. (A.R. 205.) Plaintiff's primary impairment of
16 chronic stable ventriculomegaly and stable hydrocephalus,
17 manifested by objective findings of large ventricles on CT scans
18 of August 5 and 7, 2000, and May 1, 2001, had since 1993 limited
19 Plaintiff to sitting, standing, and walking no more than four
20 hours per day, with a need to elevate the legs for thirty minutes
21 every two hours and to avoid frequent bending. (A.R. 204, 466,
22 469.)

23   In November 2003, Dr. Meyer opined that due to migraines
24 with a stable VP shunt, Plaintiff was permanently unemployable
25 from July 2003 through November 2004, despite Plaintiff's having
26 reached maximal surgical management for hydrocephalus with
27 migraines as a major medical problem. (A.R. 431-32.)

28   In February 2005, a clinic note records that Plaintiff

10

1  reported to Dr. Meyer that she had continual severe headaches not
2  relieved by Imitrex or medications, including morphine. (A.R.
3  487.) It was noted that Plaintiff had "100% permanent disability"
4  due to migraine and hydrocephalus with a shunt, and she had
5  reached maximal medical benefits with respect to her continuing
6  migraines. (A.R. 487.)

7      The ALJ noted the contrary opinion of Dr. Emanuel Dozier,
8  who in January 2001 had performed a consultative internal
9  medicine evaluation of the Plaintiff, who reported severe
10 headaches with nausea and blurred vision, although that day she
11 was without symptoms. The examination showed decreased visual
12 acuity of 20/100 in her left eye, normal strength, reflexes, and
13 gait; normal range of movement in her back and extremities;
14 normal neurological exam; and no evidence of edema. The
15 impression was hydrocephalus with functioning BP shunt, and
16 chronic, recurrent headaches. Dr. Dozier opined that Plaintiff
17 could lift up to fifty pounds occasionally, twenty-five
18 frequently, and sit, stand, or walk for six hours in an eight-
19 hour day without any restrictions. (A.R. 168-72.)

20     The ALJ stated:

21     In evaluating the medical evidence, the Administrative
       Law Judge gives substantial weight to the treating KMC
22     records, but not to the clinicians' repeated certifications
       that the claimant is disabled. These were given in the
23     context of helping the claimant with her ongoing
       eligibility to public assistance and to some degree
24     represent accommodations. Clarification of the
       statement that the claimant was 100% disabled
25     (citation omitted) was requested, as well as whether
       specific instances in the treating record supported
26     the claimant's allegations of disability since March 1978,
       but no response was received (citation omitted). Without
27     this additional clarification the certifications are
       conclusory and overbroad; they address the ultimate
28     issue of the claimant's disability, which is a decision

11

1   reserved to the Commissioner (SSR 95-5(p)). Further,
2   during much of the period covered by these certifications
    the claimant was in school 4 days a week. This degree
3   of activity lessens the credibility of the disability
    certifications.

4   (A.R. 362.)

5       The ALJ, however, also gave limited weight to Dr. Dozier's

6   opinion, and to the opinions of the state agency physicians

7   relying thereon, that Plaintiff could perform medium exertion

8   because it was contradicted by the course of the treating

9   records. (A.R. 362.) The ALJ expressly concluded, "The evidence

10  as a whole, including the claimant's testimony below, supports

11  the conclusion that she is able to perform sedentary exertion on

12  a daily basis. (A.R. 363.) The ALJ stated that Plaintiff's

13  schooling "appears to have been almost fulltime, which suggests

14  that she would have the capacity for at least sedentary

15  exertion." (A.R. 363.)

16      The ALJ relied on the fact that Dr. Meyer failed to respond

17  to the ALJ's letter of July 2005, requesting clarification of the

18  opinions, including a definition of 100% disabled, the objective

19  factors relied upon in forming the opinions, the earliest

20  possible date Plaintiff's physical limitations commenced or

21  became most pronounced, and any physical limitations associated

22  with findings regarding Plaintiff's exertional capacity. (A.R.

23  496.) The ALJ noted that after the date on which Plaintiff

24  claimed her disability commenced, namely, March 8, 1978,

25  Plaintiff had worked as a shipping clerk in 1993, a teacher's

26  aide in 1999, a cashier in 2001, and had performed other jobs and

27  had earned an associate degree between 2001 and 2003. (A.R. 496.)

28      Plaintiff argues that Dr. Meyer would not have responded to

a request for information absent a medical authorization, and no authorization was included in the ALJ's request. (Brief at 10-11.) The record does not reflect whether or not an authorization was included; there is no reference in the letter to any attachment or to any authorization. There is no apparent explanation for Dr. Meyer's failure to respond to the letter. Defendant asserts that it is the policy of the Office of Disability Appeals and Review to send a medical authorization with every request for medical information. (Brief p. 6.) However, the record does not reflect what the practice normally was. Further, the fact that the ALJ left the record open after the hearing for additional records from Dr. Meyer (A.R. 509-510) is not determinative; this does not appear to have been related to the ALJ's letter request. Additional treating records were submitted. (A.R. 470-495.)

The lack of clarification may be a basis in the abstract for placing less emphasis on Dr. Meyer's opinion. However, the more pertinent concerns are those regarding the opinions that were expressed by the ALJ in the letter to Dr. Meyer. It is clear that "100% disabled" is not a particularly meaningful assertion to an ALJ of the SSA; clarification was reasonably requested as to this portion of the opinion.

However, other portions of the opinions were already stated in terms more congruent with the categories pertinent to a SSA claimant's RFC. Further, the other questions asked by the ALJ appeared to be redundant or unnecessary. The ALJ asked if any physical limitations were associated with the findings concerning exertional limitations, namely, the ability to stand, walk, sit,

1  lift, and carry. (A.R. 496.) Dr. Meyer had already opined in 2001
2  that Plaintiff needed to elevate her legs for thirty minutes
3  every two hours; when the questionnaire he filled out asked for
4  any additional work limitations, Dr. Meyer stated that Plaintiff
5  needed to avoid frequent bending. (A.R. 204.) Thus, Dr. Meyer had
6  already stated the additional physical limitations.

7      The ALJ asked for a brief notation as to the objective
8  factors upon which the doctor relied in forming his opinions.
9  However, in 2001, the doctor had already responded that the
10 objective findings on which he based his opinion were large
11 ventricles on head as shown on the CT scans of August 5 and 7,
12 2000, and of May 2001. (A.R. 204.) Dr. Meyer's other opinions had
13 repeatedly referred to ventriculomegaly, hydrocephalus, and
14 chronic headaches as the basis for the opinion. It does not
15 appear that there could have been any valid uncertainty as to the
16 objective findings relied upon by the treating physician.

17     Because most of the data sought by the ALJ in his letter had
18 already been supplied, the dearth of such information is not of
19 sufficient probative force to be a legitimate reason for not
20 crediting the opinion of the treating physician. The conclusional
21 nature of an opinion may constitute a basis for devaluing it.
22 Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney
23 v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v.
24 Bowen, 881 F.2d 747, 751 (9th Cir. 1989). However, the treating
25 doctor's opinion in the case before the Court was sufficiently
26 detailed to describe a relatively precise functional capacity,
27 and it sufficiently identified the objective findings, diagnoses,
28 and prognoses upon which it was based, which in turn were

1  supported by the record, in order to be reasonably supported by

2  pertinent documentation. Accordingly, the Court concludes that in

3  this respect, the reasoning of the ALJ for rejecting Dr. Meyer's

4  opinion was not sufficiently legitimate and probative and was not

5  supported by substantial evidence in the record.

6      The ALJ relied on the fact that Dr. Meyer rendered opinions

7  that addressed the ultimate issue of the Plaintiff's disability,

8  a decision reserved to the Commissioner. It is true that the

9  ultimate issue of disability vel non is reserved to the

10 Commissioner because a determination of whether or not a claimant

11 meets the statutory definition of disability is a legal

12 conclusion reserved to the Commissioner; the opinion of a medical

13 source on the ultimate issue of disability is not conclusive. 20

14 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); Magallanes v. Bowen, 881

15 F.2d 747, 751 (9th Cir. 1989). However, the fact that an expert

16 addresses the ultimate issue should not constitute a basis for

17 devaluing a treating doctor's opinion in circumstances such as

18 the present, in which the treating physician stated the specific

19 extent of Plaintiff's exertional capacity, precisely limited the

20 maximum hours to be worked, specified the requirement of

21 elevating the legs for precise periods of time, and set forth

22 specific postural limitations. This is not a situation in which

23 the expert simply reached a conclusion without intermediate data

24 that explained and justified the result or otherwise departed

25 from his medical functions and invaded the legal province of the

26 ALJ.

27     The ALJ relied on the fact that Plaintiff had been in school

28 four days a week, which lessened the credibility of the

1  disability certifications. Plaintiff testified that she went to
2  college at San Joaquin Valley College and learned medical billing
3  between 2001 to 2003, and received a certification. (A.R. 520.)
4  She completed fifty-four units. Plaintiff attended school Monday
5  through Thursday, could not recall how many hours, but recalled
6  that it was one or two hours per class and depended on how many
7  classes she had. (A.R. 521.) Plaintiff had also completed twenty
8  other units at Riverside Community College, but not all her units
9  were accredited or subject to being transferred. (A.R. 526-27.)

10      It is not clear from the record how many hours a day
11  Plaintiff actually spent at school; Plaintiff may well have been
12  attending school on a part-time or half-time basis. Another
13  problem with the legitimacy of Plaintiff's schooling as a reason
14  for rejecting or devaluing the opinion of Dr. Meyer is that Dr.
15  Meyer opined that Plaintiff could work a maximum of four hours a
16  day when she was able to work. It is not even clear that
17  Plaintiff's participation in school exceeded the amount of hours
18  that half-time employment would involve. Thus, the assertion that
19  Plaintiff's school activity lessened the credibility of the
20  disability certifications lacks logical force in the
21  circumstances of this case.

22      The other reason articulated by the ALJ in rejecting
23  Plaintiff's treating doctors' opinions of her disability was that
24  the opinions regarding disability were given in the context of
25  helping Plaintiff with her ongoing eligibility for public
26  assistance and thus to some degree represented accommodations.
27  (A.R. 362.)

28      The purpose for which an opinion is provided is not a

1  legitimate basis for evaluating the reliability of the report;

2  however, evidence of the circumstances under which a report was

3  obtained and its consistency with other records, reports, or

4  findings could form a legitimate basis for evaluating the

5  reliability of the report. The correct standard with respect to

6  an opinion's purpose is that in the absence of other evidence to

7  undermine the credibility of a medical report, the purpose for

8  which the report was obtained does not provide a legitimate basis

9  for rejecting it. <u>Reddick v. Chater</u>, 157 F.3d 715, 726 (9th Cir.

10 1998).

11      Here, as the previous analysis reflects, there is sparse

12 other evidence that undermines the credibility of Dr. Meyer's

13 opinion. Even if some consideration of this factor were

14 appropriate, the Court notes that Dr. Meyer was a neurologist who

15 treated Plaintiff for five years and was primarily responsible

16 for follow-up care of Plaintiff's hydrocephalus and shunt issues.

17 Plaintiff made her need for documentation of her condition clear.

18 (A.R. 487, 492.) However, the record presents a situation of a

19 long-standing treating relationship with a patient with

20 indisputable clinical signs, and increasing symptoms, who

21 happened to be dealing with a bureaucracy that required expert

22 documentation; it does not appear that the sole or even

23 significant purpose of any medical visit or opinion was an

24 accommodation of an unsupported subjective claim or a sole

25 purpose to obtain benefits.

26      The ALJ purported to give "substantial weight to the

27 treating KMC [Kern Medical Center] records, but not to the

28 clinicians' repeated certifications that the claimant is

17

1   disabled." (A.R. 362.) The ALJ did not undertake any systematic
2   or reasoned review of the medical record to attempt to interpret
3   it as being inconsistent with the treating physicians' opinions.
4   Review of the chronology set forth by the ALJ reflects a record
5   that shows symptoms increasing with worsening headaches requiring
6   morphine, consistent ventricular dilation, agenesis of the corpus
7   callosum, and continuing intermittent incapacity due to
8   Plaintiff's hydrocephalus and associated symptoms. Plaintiff's
9   treating sources were generally consistent in concluding that
10  Plaintiff's impairments rendered her unable to perform full-time
11  work when she was able to work and in assessing limited
12  exertional capacities. The ALJ even rejected Dr. Dozier's
13  contrary opinion that Plaintiff could perform medium exertion as
14  being contradicted by the treating records. (A.R. 362.)

15       Here, the treating physician's opinion was well-supported by
16  medically acceptable clinical and laboratory diagnostic
17  techniques and was not inconsistent with the other substantial
18  evidence in the case record.

19       Under the circumstances, the Court concludes that the ALJ
20  failed to state specific and legitimate reasons, supported by
21  substantial evidence, for rejecting the opinions of Plaintiff's
22  treating physician, Dr. Meyer.

23       V. Remedy

24       Where the Commissioner has failed to provide adequate
25  reasons for rejecting the opinion of a treating or examining
26  physician, a reviewing court credits them as a matter of law.
27  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). 
28  An immediate award of benefits should be directed where 1) the

1  ALJ has failed to provide legally sufficient reasons for
2  rejecting such evidence [i.e., opinion of treating or examining
3  physician], 2) there are no outstanding issues that must be
4  resolved before a determination of disability can be made, and 3)
5  it is clear from the record that the ALJ would be required to
6  find the claimant disabled were such evidence credited. Smolen v.
7  Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

8        Here, if the ALJ's exertional level of sedentary work were
9  credited, and further the RFC opinions of Dr. Meyer were credited
10 (A.R. 204, 227-29, 466-69, 431-32, 487), then it appears that
11 these precise limitations have not been the subject of vocational
12 testimony. Further, it would still be necessary to determine the
13 date of onset of disability.

14       Accordingly, remand for further determination of disability
15 and date of onset is in order.

16       VI. Disposition

17       Based on the foregoing, the Court concludes that the ALJ's
18 decision was not supported by substantial evidence in the record
19 as a whole and was not based on proper legal standards.

20       Accordingly, it IS ORDERED that

21       1. Plaintiff's social security complaint IS GRANTED, and

22       2. The matter IS REMANDED pursuant to sentence four of 42
23 U.S.C. § 405(g) for further consideration, consistent with this
24 decision, of Plaintiff's status as disabled, including assuming
25 that Plaintiff is capable of exertion at the sedentary level, and
26 further accepting the RFC limitations set forth by Dr. Meyer in
27 his opinions of August 2000, August 2001, November 2003, and
28 February 2005, and for further determination of whether or not

1    with this RFC Plaintiff could perform her past relevant work, and
2    to the extent appropriate, for further consideration of whether
3    on the basis of the Plaintiff's age, education, work experience,
4    and residual functional capacity, Plaintiff could perform any
5    other gainful and substantial work within the economy, and for
6    articulation of legally sufficient findings thereof; and
7         3. Judgment BE ENTERED for Plaintiff Natasha Aaron and
8    against Defendant Michael J. Astrue.
9    IT IS SO ORDERED.
10   **Dated:    October 6, 2008**              **/s/ Sandra M. Snyder**
                                     UNITED STATES MAGISTRATE JUDGE

20